**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 9, 2025

John M. Seaman
Joseph A. Sparco
Christopher Fitzpatrick Cannataro
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Andrea S. Brooks
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19807

Re: *Jones v. FON Holdings, LLC*,
C.A. No. 2023-0968-LM

Dear Counsel:

This letter opinion resolves the exceptions of Plaintiff Brian Jones ("Plaintiff")

to Magistrate Loren Mitchell's Final Report dated March 27, 2024 (the "Final

Report").[1]

Plaintiff was a member of Defendant FON Holdings, LLC ("Defendant" or the

"Company") until the Company redeemed his units in October 2023. Before the

Company redeemed his units, Plaintiff demanded inspection of the Company's books

and records and sued to enforce his inspection rights. Plaintiff cited two sources of

inspection rights: 6 *Del. C.* § 18-305 and Section 7.1 of the Company's governing LLC

Agreement. After Plaintiff filed suit, the parties resolved his claim to inspect

documents, and each side moved for attorneys' fees under a prevailing party provision

of the LLC Agreement and the bad faith exception to the American Rule.

---

[1] C.A. No. 2023-0968-LM, Docket ("Dkt.") 26 (Final Report).

Magistrate Mitchell resolved the cross motions for fees in the Final Report. She deemed the lawsuit a draw with no prevailing party. She further concluded that the circumstances of this case did not warrant fee shifting under the American rule. Plaintiff sought exceptions on the Magistrate's holding as to his entitlement to fees under the LLC Agreement only.[2] As required by the Delaware Supreme Court, I have reviewed the record *de novo*,[3] and reach a different outcome than the Magistrate on the one issue on exceptions.

## I.    BACKGROUND

I do not repeat Magistrate Mitchell's clearly written and thoughtfully presented factual background.

The short story is that Plaintiff, the Chief Operating Officer of a division of the Company, resigned in April 2023. Plaintiff's resignation was a "Triggering Event" under Section 10.2(a) of the LLC Agreement that granted the Company the option to redeem Plaintiff's equity for a contractually specified purchase price within 180 days of a Triggering Event, which was October 10, 2023.[4] The purchase price depended on the "Fair Market Value," a defined term in the LLC Agreement.[5] In June 2023, the Company redeemed the units of another employee who had resigned before Plaintiff.

---

[2] Dkt. 32 ("Pl.'s Exceptions"). Defendant did not take exceptions but opposed Plaintiff's. Dkt. 34.

[3] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999) ("[T]he standard of review for a master's findings—both factual and legal—is *de novo*.").

[4] Dkt. 1 ("Compl."), Ex. A ("LLC Agreement") at 55; Pl.'s Exceptions, Appendix ("Appendix") at A413.

[5] *See* LLC Agreement § 10.2(b); *see also id*. § 1.1 at 6–7 (defining "Fair Market Value").

The former employee owned 28.22% of the Company. The Company took the position that those units had no value. This concerned Plaintiff.

Plaintiff served a demand to inspect 13 categories of Company documents on August 1, 2023.[6] He listed many purposes, including valuing his units. To provide his counsel with immediate access to the documents, Plaintiff offered to "treat any documents produced as attorneys' eyes only until the execution of a customary confidentiality agreement."[7]

The Company responded on August 15, 2023, agreeing to produce certain documents on an attorneys' eyes only basis until the parties agreed on terms of confidentiality.[8] The Company did not dispute Plaintiff's purposes or entitlement to inspection.

The Company made a small production of documents on September 6, 2023, subject to the attorneys' eyes only restriction that prohibited Plaintiff from viewing the documents. Plaintiff sent the Company a proposed confidentiality agreement two days later. Plaintiff requested Defendant's "prompt attention . . . given that [Plaintiff] has agreed to treat the documents as AEO until the [confidentiality agreement] is executed."[9]

---

[6] Compl., Ex. B.

[7] *Id.* at 6.

[8] Compl., Ex. C.

[9] Appendix at A193.

When Defendant did not immediately respond, Plaintiff followed up on September 13, 15, and 19.[10] Defendant sent its proposed revisions to the confidentiality stipulation on September 21, 2023.[11] They were problematic from Plaintiff's perspective. For example, Defendant struck language allowing Plaintiff to keep copies of documents. Defendant struck language protecting Plaintiff's ability to bring legal action relating to his demand or the documents produced in response to it. Defendant struck the forum selection clause requiring any lawsuit relating to Plaintiff's demand to be brought in this court.[12] And Defendant refused to lift the attorneys' eyes only restriction unless Plaintiff acceded to Defendant's terms. Plaintiff rejected the changes by email on Friday, September 22. Plaintiff demanded that Defendant respond by Monday, September 25 to Plaintiff's proposal. Because September 25 was a religious holiday, defense counsel stated that the Company would respond on September 26.

Plaintiff did not wait until September 26 to file suit, and that is understandable. The October 10 deadline was fast approaching, Plaintiff believed he was entitled to additional documents, and Plaintiff had not yet laid eyes on the limited production the Company had made because of the attorneys' eyes only

---

[10] *Id.* at A192–193.

[11] *Id.* at A198–204.

[12] *Id.*

designation that Defendant refused to lift. On September 25, Plaintiff filed his Verified Complaint for Inspection of Books and Records (the "Complaint").[13]

The Company responded to the Complaint by redeeming Plaintiff's units. On October 2, 2023, Defendant notified Plaintiff that it was "exercising its right to repurchase all of [his] Preferred Unit[s]" for $150,000, with 20% paid at closing and the balance paid over the next five years.[14]

On October 3, 2023, Plaintiff and Defendant entered into a confidentiality agreement that removed the attorneys' eyes only designation and allowed Plaintiff to review the documents. On October 4, 2023, Defendant made its second production of documents. After reviewing the documents, Plaintiff determined not to dispute the purchase price.

Defendant filed its answer on October 10, 2023.[15] That same day, Plaintiff offered to resolve all disputes between the parties if Defendant agreed, among other things, to pay Plaintiff's attorneys' fees and expenses. Defendant rejected Plaintiff's offer on October 12, 2023, and served discovery on Plaintiff, including interrogatories and requests for production of documents.[16] Plaintiff responded to the discovery requests. On October 19, 2023, Defendant made a third production of documents.

---

[13] Compl.

[14] Appendix at A240; *id.* at A413.

[15] Dkt. 7.

[16] Dkt. 8.

By late November 2023, the parties had reached agreement that the documents produced resolved Plaintiff's inspection demand (the "Stipulation").[17] The Stipulation resolved the dispute over inspection but catalyzed a dispute regarding fees. Each party claimed victory in the litigation and moved for fees on two grounds—a prevailing party provision of the LLC Agreement and the bad faith exception to the American rule.[18] The Final Report denied both motions for fees, and Plaintiff filed exceptions.

## II. ANALYSIS

On exceptions, Plaintiff argues that he prevailed in the litigation and is entitled to fees under the LLC Agreement. He asserts other legal arguments, and Defendants counter with many. But Plaintiff's simplest argument suffices. Plaintiff is entitled to fees under the LLC Agreement because is the prevailing party.

Section 13.12 of the LLC Agreement mandates fee shifting to the "prevailing party" "in case of any dispute relating to this agreement or the subject matter hereof."[19] The LLC Agreement does not define the term "prevailing party," so "the parties can be presumed to have intended that that term would be applied by the court as it has traditionally done so."[20]

---

[17] Dkt. 12 (Order entering Stipulation).

[18] Dkts. 15, 19.

[19] LLC Agreement § 13.12.

[20] *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 281 (Del. 2022) (quoting *Brandin v. Gottlieb*, 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000)) (internal quotation marks omitted).

As this court has held, "[a]bsent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner."[21] To identify a "prevailing party," Delaware courts "evaluate the substance of a litigation to determine which party predominated."[22] That usually means the party who prevailed on "most of her claims."[23] Under another formulation by this court, "to achieve predominance, a litigant should prevail on the case's chief issue."[24]

Plaintiff commenced this action to vindicate his inspection rights under Section 7.1 of the LLC Agreement, but the chief issue concerns the confidential treatment of the documents. In Plaintiff's view, Defendant had improperly demanded material concessions of Plaintiff's substantive rights as a precondition to his inspection of books and records.[25] Plaintiff prevailed on the confidentiality conditions, achieving, by agreement, the terms Plaintiff sought from the court.

Defendant does not dispute that Plaintiff got what he wanted. Defendant's main argument is that Plaintiff did not need to file litigation to obtain this outcome. In Defendant's view, the parties were still negotiating terms when Plaintiff filed his

---

[21] *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at \*6 (Del. Ch. Aug. 13, 2010) (quoting *West Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at \*8 (Del. Ch. Feb.23, 2009)) (internal quotation marks omitted).

[22] *World-Win Mktg., Inc. v. Ganley Mgmt. Co.*, 2009 WL 2534874, at \*2 (Del. Ch. Aug. 18, 2009) (citations omitted).

[23] *Bako Pathology*, 288 A.3d at 281 (citing *Brandin*, 2000 WL 1005954, at \*27).

[24] *Id.* (cleaned up) (citation omitted).

[25] Appendix at A73–74; *id.* at A83–84.

complaint on a religious holiday. But Plaintiff was under the gun. He sought inspection mainly to value his units to inform their Fair Market Value. The deadline for the Company to redeem Plaintiff's units was October 10, 2023. The Company was reticent to respond to Plaintiff before Plaintiff filed the litigation and imposed atypical conditions on inspection. Had the Company redeemed Plaintiff's units, Plaintiff would have lost standing to pursue his inspection rights. Hence the rush. In sum, it is hard to fault Plaintiff for filing when he did. And because Plaintiff obtained everything he sought through the litigation, he won his case. He is the prevailing party. He is entitled his fees under the LLC Agreement.

## III.    CONCLUSION

Plaintiff prevailed in the litigation and is entitled to costs and reasonable attorneys' fees.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)